IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UTICA MUTUAL INSURANCE COMPANY, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Case Number CIV-04-965-C |
| | ) |
| PAUL VOYLES, et al., | )<br>) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Now before the Court are eight Motions for Summary Judgment, the first filed by Plaintiff Utica Mutual Insurance Company (Utica), and the remaining seven cross-motions filed by the following Defendants: (1) Great States Insurance Agency, Inc. (Great States); (2) Healthback Holdings, L.L.C., and Greg Peck; (3) Boardman, Inc., and Wichita Steel Fabricators, Inc.; (4) Bryant Jones Enterprises, Inc.; (5) Brewer Carpet & Design Center, Inc., Stone Mountain of Oklahoma City, L.L.C., Pro-Source of Oklahoma City, Inc., and Tojo, Inc.; (6) Tabitha Jaquay-Fernandez; and (7) Justin Bruner.[1] All litigants filed a response, with the exception of Defendants Greg Peck and John Millspaugh.[2] Accordingly, the motions are ripe for disposition. The Court, upon full consideration of the litigants' submissions and the

---

[1] Defendants Paul Voyles and Justin Bruner filed for bankruptcy; thus all claims against them were automatically stayed. 11 U.S.C. § 362(a). The bankruptcy court has since lifted the automatic stay (Notice, Dkt. No. 132, Exs. A & B); therefore, Utica's declaratory judgment claim against Voyles and Bruner may proceed.

[2] "[A] party's failure to file a response to a summary judgment motion is not, by itself, a sufficient basis on which to enter judgment against the party. The district court must make the additional determination that judgment for the moving party is 'appropriate' under Rule 56." Reed v. Bennett, 312 F.3d 1190, 1195 (10th Cir. 2002).

applicable law, now **DENIES** Utica's Motion for Summary judgment and **GRANTS IN PART** and **DENIES IN PART** the above-listed Defendants' cross-Motions for Summary Judgment.

## BACKGROUND

Great States was an insurance agency owned and operated by Voyles, who carried the title of president. Utica sold Great States an Errors and Omissions Liability Policy (Policy) to protect Great States and its agents and brokers – including Voyles – from any wrongful acts committed during the conduct of Great States' insurance business. In late 1999 or early 2000, Voyles, along with two other individuals, formed Fairway Employment Services, Inc. (Fairway), an employee leasing company. While at Fairway, Voyles carried the title of vice-president.

Fairway essentially operated as an outsourced personnel or human resources department. As part of Fairway's agreement with its clients, the employees of Fairway's clients became Fairway's employees. In turn, Fairway leased the same employees back to the clients for a fee while providing its clients' leased employees with, inter alia, insurance recommendations and placement. Fairway worked with Great States to procure multiple forms of insurance for Fairway's clients. However, in January 2002, Fairway ceased using Great States to procure insurance on account of mistakes in representations of coverage.

In late 2002, several of Fairway's clients filed individual suits in state court against multiple defendants, including Fairway, Great States, and Voyles, regarding the type of insurance and insurance services they had received. Fairway filed a third-party petition against Great States and Voyles regarding the insurance services they provided. The entities suing

Fairway subsequently filed amended petitions and also brought claims against both Great States and Voyles. During the course of the underlying litigation, an Oklahoma state court placed Fairway into receivership. Utica subsequently commenced this action under diversity jurisdiction and now moves the Court to enter a declaratory judgment holding that Utica has no duty under the Policy to defend either Great States or Voyles in the underlying state court litigation.

### STANDARD OF REVIEW

In a diversity case, the Court applies the substantive law of Oklahoma, including its choice of law rules. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941). The Policy indicates Utica agreed to provide insurance for Great States in Oklahoma and that the litigants signed the Policy in Oklahoma (Pl.'s Mot. Summ. J., Ex. A, at 1); accordingly, Oklahoma law governs the interpretation of the Policy. 15 Okla. Stat. § 162; Rhody v. State Farm Mut. Ins. Co., 771 F.2d 1416, 1420 (10th Cir. 1985).

Fed. R. Civ. P. 56(a) and (b) authorize both Utica and Defendants to move the Court for summary judgment by showing that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). How the moving party may demonstrate that it is entitled to summary judgment depends upon which party bears the burden of persuasion at trial. Anderson v. Dep't of Health & Human Servs., 907 F.2d 936, 947 (10th Cir. 1990). When the moving party bears the burden of persuasion at trial, the moving party must put forth evidence demonstrating that it would be entitled to a directed verdict. Id. A successful demonstration shifts the burden of production to the non-

moving party who, in turn, must go beyond the pleadings and submit evidence demonstrating the existence of a genuine issue worthy of trial in order to defeat summary judgment. Id.

When the non-moving party bears the burden of persuasion at trial, the moving party may demonstrate it is entitled to summary judgment by two alternative means. First, the moving party may submit evidence negating an element of the non-moving party's claim. 10A Charles Alan Wright et al., Federal Practice and Procedure § 2727 (3d ed. 1998). Second, the moving party may point out to the Court that the non-moving party lacks sufficient evidence on an essential element of his claim. Id.

The Court's function at the summary judgment stage is not to weigh the evidence but to determine whether there is a genuine issue worthy for trial. Willis v. Midland Risk Ins. Co., 42 F.3d 607, 611 (10th Cir. 1994). "An issue is 'genuine' if [viewing the full record] there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670 (10th Cir. 1998) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). "The mere existence of a scintilla of evidence in support of the nonmovant's position is insufficient to create a dispute of fact that is 'genuine' . . . ." Lawmaster v. Ward, 125 F.3d 1341, 1347 (10th Cir. 1997). "An issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." Adler, 144 F.3d at 670 (citing Anderson, 477 U.S. at 248). When deciding whether summary judgment is appropriate, the Court views the evidence in the light most favorable to the non-moving party, and draws all reasonable inferences in the non-moving party's favor.

See Anderson, 477 U.S. at 255; Simms v. Okla. ex rel. Dep't of Mental Health, 165 F.3d 1321, 1326 (10th Cir. 1999).

Within the context of cross-motions for summary judgment, the litigants do not necessarily concede the absence of a genuine issue of material fact in dispute. Nafco Oil & Gas, Inc. v. Appleman, 380 F.2d 323, 324-25 (10th Cir. 1967). The Court is to consider each motion on its own merits; "the denial of one does not require the grant of another." Buell Cabinet Co., Inc. v. Sudduth, 608 F.2d 431, 433 (10th Cir. 1979). When adjudicating the motions, the Court is authorized to assume that there is no additional evidence which needs to be considered other than that filed by the litigants; nevertheless, summary judgment is inappropriate if any material fact is still in dispute. Atl. Richfield Co. v. Farm Credit Bank of Wichita, 226 F.3d 1138, 1148 (10th Cir. 2000).

## DISCUSSION

The litigants' dispute centers upon whether the Policy obligates Utica to defend Great States and Voyles in multiple underlying state court suits. Utica argues that the Policy's fourteenth exclusion applies as, according to Defendants' allegations, Defendants' claims seek to recover losses stemming from the roles of Great States and Voyles in creating and operating Fairway, an entity which used a partially funded insurance plan and subsequently became insolvent. Utica also argues that the Policy's fifteenth exclusion applies as the underlying allegations arise out of Fairway's insolvency and its partially funded insurance plan's inability to pay the health claims of Defendants' leased employees. Defendants counter that Utica has a duty to defend Great States and Voyles in the underlying state suits as the Policy exclusions

upon which Utica relies are inapplicable, and that the Policy covers the erroneous or negligent actions of Great States and its agent Voyles in not initially obtaining the correct insurance.

The litigants' dispute over the applicability of the exclusions is premature; instead, as Defendants argue, the proper focus is upon whether the actions taken by Great States and Voyles as its president are covered by the terms of the Policy. As delineated below, the Court finds that Utica owes Great States and Voyles a defense in the underlying state court actions, but only with regard to actions taken by Great States and Voyles as its president – not for actions by Voyles as vice-president of Fairway.

In this action, it is important to clarify who was involved with the creation and operation of Fairway and in what capacity. The evidence in the record clearly indicates that only three persons, one of which was Voyles, were shareholders and founders of Fairway (see Pl.'s Mot., Ex. B, at 60-61; Defs' Mot. Summ. J., Dkt. No. 102, Ex. 7, at 20.) During the relevant time, Voyles maintained separate positions and acted in different roles for both Fairway and Great States – one as vice-president of Fairway, and the other as president of Great States. (Pl.'s Mot., Ex. B, at 70.) It is reasonable to infer from the aforementioned facts that Great States, as its own legal entity, remained wholly separate from Fairway and was not involved with either the creation of Fairway or its day-to-day operations. This inference is supported by the complete absence of evidence in the record indicating that Great States owned, formed, created, administered, or operated Fairway in any capacity. The Court now turns to the Policy.

Utica and Great States are free to contract for insurance against any risks they see fit to cover, but, upon the contract's formation, they are bound by its terms. Wiley v. Travelers

Ins. Co., 1974 OK 147, ¶ 16, 534 P.2d 1293, 1295.  When adjudicating a policy dispute, the Court must first determine as a matter of law whether the policy is ambiguous.  Pitco Prod. Co. v. Chaparral Energy, Inc., 2003 OK 5, ¶ 12, 63 P.3d 541, 545.  "The construction of an insurance policy should be a natural and reasonable one, fairly construed to effectuate its purpose, and viewed in the light of common sense so as not to bring about an absurd result." Wiley, ¶ 16, 534 P.2d at 1295.  Here, the terms of the Policy regarding who is an insured are clear and free from ambiguity:

> **SECTION IV - WHO IS AN INSURED**
> Each of the following is an insured to the extent set forth below:
> 1.    The individual, partnership, corporation or limited liability company designated as the Named Insured in the Declarations;
> 2.    Your executive officers or directors, <u>but only with respect to their duties as your officers and directors</u>;
> 3.    Your partners or members, <u>but only with respect to the conduct of your business</u>[.]

(Pl.'s Mot., Ex. A, § IV (emphasis added).)  Great States is the sole entity listed in the Named Insured section of the Policy.  (Id., at 1.)  Accordingly, only Great States and, under sub-part 2, Voyles in his capacity as Great States' president, are insured under the Policy.  Furthermore, the Policy only provides coverage for negligent acts, errors, or omissions committed by Great States or Voyles during the conduct of Great States' business.  (Id., § I ¶ 6, 14; § II ¶ 1(e).)  In other words, neither Fairway, its employees, nor Voyles' actions as Fairway's vice-president are covered by the Policy.

That Voyles worked for two separate companies in separate roles at the same time lends itself to confusion, which may be seen in Utica's overly narrow framing of Defendants' claims

as being premised solely upon the involvement of Voyles and Great States with Fairway and its faulty administration, failed operations, and entry into receivership.  As discussed above, Great States always retained separate legal status, was not a founding entity of Fairway, and was not a part of Fairway's day-to-day operations.  Defendants' allegations are not limited to actions by Fairway or Voyles as its vice-president.  Portions of Defendants' allegations are that Great States was acting as a typical insurance agency making insurance recommendations and selling insurance policies to clients, one of which happened to be Fairway, and that their losses arise from negligent acts or omissions by Great States and Voyles as its president during the conduct of Great States' business – the very kind of acts or omissions designed to be covered by the Policy.  (See Pl.'s Mot., Ex. D, ¶¶ 14-23, 25-28, 32-38; id. Ex. E, ¶ 4, 5, 8, 10, 11; Ex. F, ¶¶ 26, 30, 31, 35-37, 39, 43, 44; Ex. G, ¶¶ 5, 6, 8-10; Ex. I, ¶¶ 3, 4, 9-16.)  Utica's exclusion arguments, therefore, are irrelevant as they are either premised upon actions taken by Fairway and Voyles as its vice-president, or the unproved assumption that Great States was involved with Fairway's operation and administration.  Because the petitions in the underlying state court actions contain allegations sufficient to give rise to the reasonable possibility of recovery under the Policy, Utica owes a duty to defend Great States and Voyles as its president against allegations that either party committed wrongful acts during the course of Great States' business. First Bank of Turley v. Fid. & Deposit Ins. Co. of Md., 1996 OK 105, ¶ 13, 928 P.2d 298, 303.

## CONCLUSION

For the reasons delineated herein, Utica's Motion for Summary Judgment [Dkt. No 97] is **DENIED**. Utica owes a duty to defend to the extent that Defendants' claims are premised upon alleged negligent actions by Great States and Voyles as its president during the conduct of Great States' business; therefore, Defendants' cross-Motions for Summary Judgment [Dkt. Nos. 98, 99, 100, 101, 102, 103, 104] are **GRANTED**. However, to the extent Defendants' claims are premised upon actions by Fairway or Voyles' actions as vice president of Fairway, Defendants' cross-motions are **DENIED** as they are not covered entities under the Policy. Judgment will enter accordingly.

IT IS SO ORDERED this 15th day of June, 2006.

ROBIN J. CAUTHRON
United States District Judge